## THE PEOPLE a. CHRISTIE.

*Supreme Court, First District; General Term, December,* 1855.

JURORS.—WITNESSES.—QUESTIONS AS TO PREJUDICE.

A juror challenged for principal cause on a criminal trial, on the ground of having formed or expressed an opinion of the guilt of the prisoner, may be examined by the challenging party, to prove the challenge.

What questions are admissible on the examination of a juror challenged.

A witness may be cross-examined as to whether he belongs to a secret society,— *e. g.,* the order of United Americans—with a view to show that the principles and objects of such society are such, that his testimony is liable to suspicion of unfairness.

Motion for a new trial.

This was an indictment against Edward Christie and others. The facts involved appear in the opinion.

MORRIS, J.—The defendants were jointly indicted for riot, committed in the ninth ward of the City of New York, on the 4th day of July, 1853; the defendants pleaded not guilty; and on the 14th day of December, 1853, the issue of traverse so joined came on to be tried before the Hon. Francis R. Tillou, Recorder, &c.—the defendants being tried jointly.

On the first juror, Samuel Carson, being called, he was challenged for principal cause by the defendants, on the ground of his having formed or expressed an opinion of the guilt of the prisoners, or some of them. This challenge was denied by the people, and issue was thereupon joined. The defendants' counsel, John McKeon, offered the juror himself as a witness to prove the challenge. This was objected to by the people and the objection sustained by the court, to which decision the defendants' counsel excepted.

The People *a.* Christie.

It was admitted, for the purpose of argument of the challenge of jurors, that on the 4th day of July last past, there was a procession of a society called the Ancient Order of Hibernians—a society composed of Irishmen and Roman Catholics—that the defendants were members of that society. And it was admitted, for the purpose of the argument as to the challenge of jurors, that a portion of the defendants are Catholics and a portion foreigners; that the alleged riot took place in the neighborhood of Abingdon square, in the ninth ward of the City of New York, through which the procession passed, and that during the riot, expressions of a hostile and insulting character were used by some of the parties engaged, as for instance, "Kill the d—d Irish," "Kill the d—d Popish sons of b—s," "Kill the d—d Yankees." It was also contended by the defendants' counsel, for the purpose of the challenge to jurors, that a strong prejudice existed among the police and inhabitants of that section of the city against Irish and Roman Catholics.

Several jurors were called and rejected; some were peremptorily challenged; one of the jurors being called and challenged to the favor, on the ground that he had a bias, prejudice, or impression against the prisoners or some of them, triers were appointed by Court. One juror so challenged for favor, was rejected by the triers. James Black was then called as a juror, who was challenged to the favor by the defendants' counsel, on the ground that the juror called had a bias, prejudice, or impression against the defendants or some one of them.

This challenge was denied by the people, and issue was thereupon joined. The same triers as in the former cases, were, by consent, in this case appointed. The defendants called as a witness to prove the challenge, the juror so called, who, after answering several questions in relation to the ground of challenge, was asked the following question:

Q. Have you any bias or prejudice against Roman Catholics?

To this question the District Attorney objected, and contended that the juror was not bound to answer, if he thought it would disgrace him. The Court sustained the objection of the

District Attorney, to which decision the counsel for the defendants excepted. The Court thereupon informed the witness that he was not bound to answer the question, if, in his opinion, the answer would tend to disgrace him; to which instruction and decision the defendant's counsel excepted. On the question being put, the juror declined to answer.

The defendants then moved the Court to compel the juror, as being witness, to answer the question, which the Court refused to do.

To which decision and refusal the defendants' counsel excepted.

Timothy H. West was called as a witness on the part of the prosecution, and testified as follows: That he lived at No. 23, Eighth avenue; was a house-carpenter; saw the procession; there was a space of twelve feet or more through which the stage-driver passed; heard the expression—"Kill the d—d son of a b—ch;" after witness left his son in Troy street, witness returned to the stage; he then met a policeman, and told him the 'Order of Hibernians had attacked the stage-driver and were about to murder him on the spot;' McPherson went in and told them to disperse; two men made a pass at him; witness stepped back to Eighth avenue; he did not see the Marshal at the time of the affair with the stage.

On being cross-examined the witness was asked:

Q. Do you belong to the Order of United Americans?

This question was objected to by the people. The objection was sustained by the Court, and to this decision the counsel for the defendants excepted. The following question was then put:

Q. Do you belong to any Order?

This question was objected to by the people. The objection was sustained, and to which decision the defendants excepted.

At the foundation of American jurisprudence is the right to be tried by an impartial, unprejudiced jury; it is a right paramount to all others, and is not to be sacrificed to the fear or apprehension of wounding the feelings of others.

In this case, a new trial should be ordered for the following errors:

*First.* The juror, Carson, should have been received as a

witness to prove that he had formed or expressed an opinion of the guilt of the prisoners, or of some of them.

The juror who had formed an opinion and has not expressed it, is the only source from which the fact of the "formed opinion" can be obtained. There is neither dishonor nor disgrace attached to the fact that a man had formed an opinion upon any subject which agitated public consideration, and there is no reason why the juror should not be used as a witness, to prove the cause of challenge.

The prosecution at the trial did not object that the challenge assigned against this juror should not have been for principal cause, but to the favor, and therefore cannot take such position here.

*Second.* Under the admissions of facts made by counsel as the foundation of challenge, the Court erred in refusing to compel the juror, Black, to answer the question, whether he had "any prejudice or bias against Roman Catholics."

The question should have been permitted.

*Third.* The question to the witness, West, whether he belonged "to the Order of United Americans," should have been permitted by the Court; for had it, by the witness, been shown that he did, and that such order was established with prejudice against, and to oppose Irish and Roman Catholics, such fact was proper for the jury to receive, to enable them to determine how much, if any, the witness's evidence was warped by the principles of his order.

---

## TEAZ a. CHRYSTIE.

*New York Common Pleas, General Term; October,* 1855.

RE-HEARING OF APPEAL.—JUDGMENT OF MARINE COURT.

A rehearing of an appeal will not be granted, where no advantage could result from it.

The proper form of judgment in the Marine Court, in Mechanics' Lien cases.

Motion for re-hearing of an appeal.

The proceedings on the appeal in this case, are reported,